## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MICHELLE C.,**

   **Plaintiff,**

             **Case No. 1:20-cv-12940**

  **v.**           **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

   **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Michelle C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

## I.   PROCEDURAL HISTORY

On April 4, 2018, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since February 8, 2018.[2] R.

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

[2] Plaintiff notes that her alleged onset date is the day after Administrative Law Judge Lisa Hibner ("ALJ Hibner") denied Plaintiff's earlier-filed claims in a decision dated February 7,

228–29, 264–65, 338–45. The applications were denied initially and upon reconsideration. R. 270–75. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 283–84. Administrative Law Judge ("ALJ") Trina Moore held a hearing on November 21, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 52–92. In a decision dated December 11, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 8, 2018, Plaintiff's alleged disability onset date, through the date of that decision. R. 33–46. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on August 24, 2020. R. 18–24. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 5, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On April 6, 2021, the case was reassigned to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

2018. *Plaintiff's Memorandum of Law*, ECF No. 16, p. 1 n.1; R. 181–99. In that decision, ALJ Hibner found, *inter alia*, that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. R. 186.

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli

v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported

by substantial evidence, we are bound by those findings, even if we would have decided the

factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*,

2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or

substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d

1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic

or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

## B.        Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

On February 8, 2018, Plaintiff's alleged disability onset date, Plaintiff was 49 years old, which is defined as a younger individual (aged 45–49). R. 44. When she turned 50 years old on March 4, 2018, Plaintiff changed that age category to closely approaching advanced age. *Id*. She met the insured status requirements of the Social Security Act through December 31, 2018. R. 35. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between February 8, 2018, her alleged disability onset date, and the date of the decision. *Id*.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease, anxiety disorder, bipolar disorder, post-traumatic stress disorder, panic disorder, and agoraphobia. *Id*. The ALJ also found that Plaintiff's diagnosed migraine headaches, cervical disc disease, and cervical radiculopathy and her alleged carpal tunnel syndrome and chronic pain syndrome were not severe impairments. R. 36–37.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 37–39.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to

various additional limitations. R. 39−43. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a billing clerk, retail store manager, customer service manager, and dispatcher service chief. R. 43−44.

At step five, the ALJ found that a significant number of jobs−*i.e.*, approximately 700,000 jobs as a bottling line attendant; approximately 200,000 jobs as a bakery worker, conveyor line; approximately 1,500,000 jobs as a cleaner−existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 44−46. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from February 8, 2018, her alleged disability onset date, through the date of the administrative decision.  R. 46.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 16; *Plaintiff's Reply Brief*, ECF No. 18. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 17.

## IV.    DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to consider Plaintiff's frequent need for medical and mental health treatment on her ability to work on a "regular and continuing basis." *Plaintiff's*

*Memorandum of Law*, ECF No. 16, pp. 23–26 (citing, *inter alia*, *Kangas v. Bowen*, 823 F.2d 775 (3d Cir. 1987)); *Plaintiff's Reply Brief*, ECF No. 18, pp. 6–8 (same). This Court agrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ must assess "the nature and extent" of a claimant's mental and/or physical limitations "and then determine [that claimant's RFC] for work activity on a regular and continuing basis." 20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c); *see also* SSR 96-8p ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). The ALJ also must consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work, as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20

9

CFR 404.1567(b) and 416.967(b) with additional limitations. The claimant can occasionally climb ramps and stairs, and can occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally interact with co-workers, supervisors, and the public, with no constant interaction with the public in a customer service setting. The claimant cannot perform assembly line pace work, but with end of the day production quotas. The claimant retains the ability to perform simple routine tasks, with simple instructions.

R. 39.

Plaintiff argues that substantial evidence does not support this RFC determination because, among other things, the ALJ failed to consider the impact of Plaintiff's frequent need for medical and mental health treatment on her ability to work on a "regular and continuing basis." *Plaintiff's Memorandum of Law*, ECF No. 16, pp. 23−26 (citing *Kangas*, 823 F.2d 775); *Plaintiff's Reply Brief*, ECF No. 18, pp. 6−8 (same). In support of her position, Plaintiff argues that the record reflects at least a 20-month period of time, from February 2018 to October 2019, when she was unable to sustain work on a regular and continuing basis because of her needed treatment. *Id*. Plaintiff details this treatment as follows:

| DATE | R. PAGE | REASON | NOTE |
|---|---|---|---|
| 2/1/18 | 619,736 | Individual Therapy | Angry outbursts, pain contributes to depression |
| 2/7/18 | 576 | Individual Therapy | Focused on medication compliance |
| 2/13/18 | 577 -558 | Individual Therapy | Continue with EMT on the death of husband, son and her sister. |
| 2/20/18 | 578 -579 | Individual Therapy | Focused on clients guilt |
| 2/21/18 | 863 - 925 | Pain management | Medical branch block injection at L3/4, L4/5, L5/S1 |
| 2/27/18 | 579 - 580 | Individual Therapy | Onset of mania - like a wave come over me. |
| 3/6/18 | 580-581 | Individual Therapy | Reports going into major depressive episode... not sleeping at night... scrambled thoughts. |
| 3/13/18 | 581 | Individual Therapy | Cancelled due to migraine |

| Date | Pages | Type | Note |
|---|---|---|---|
| 3/19/18 | 582 | Individual Therapy | Having difficulty with depression |
| 3/27/18 | 582 | Individual Therapy | Reports hypo-manic episode |
| 4/3/18 | 583 | Individual Therapy | Any outbursts, crying and isolating since last session |
| 4/5/18 | 584 | individual Therapy | Cancelled - son |
| 4/11/18 | 585 | Individual Therapy | Keeping journal for mood triggers |
| 4/18/18 | 586 | Individual Therapy | Cancelled - Therapist sick |
| 4/30/18 | 586 | Individual Therapy | Cancelled - Stomach virus |
| 5/7/18 | 587 | Individual Therapy | Tense within house due to conflict |
| 7/16/18 | 653- 656 | Botox injections | Intractable migraine |
| 8/20/18 | 756 | Individual Therapy | Having angry outbursts |
| 8/24/18 | 644- 652 | Botox injections | Intractable migraine |
| 9/6/18 | 801 - 862 | Pain management | Medical branch block injection at L3/4, L4/5, L5/S1 |
| 11/19/18 | 763 | Individual Therapy | Crying more; feels "crazy, nutty;" racing thoughts; problems sleeping |
| 11/26/18 | 935 - 937 | Botox injections | Intractable migraine |
| 12/10/18 | 1028 | Individual Therapy | Therapy helps her "get things out" |
| 12/17/18 | 770- 776, 1019- 1027 | Individual Therapy | Mood low, energy and motivation low, anxiety high, poor concentration |
| 12/28/18 | 1018 | Individual Therapy | Feels "mood is still not stabilized "Energy level is not there" |
| 1/10/ 19 | 1017 | Individual Therapy | Feels "agitated all the time" |
| 1/16/ 19 | 1005 - 1013 | Individual Therapy | Feels agitated and "pissed off' most of the time." I scream and yell" |
| 1/24/19 | 1003 | Individual Therapy | Had "the worst anxiety attack ever" |
| 1/29/19 | 994- 1002 | Individual Therapy | Doi11g worse, anxiety severe, side effects of diarrhea, headache and dry heaving , and anxiety worsened. |
| 1/31/19 | 993 | Individual Therapy | Cancelled - due to migraine |
| 2/5/19 | 992 | Individual Therapy | Periods of anxiety and not wanting to go out around people. I feel guilty" about death of sister.  Has experienced inappropriate sexual touching by males. |
| 2/25/19 | 991 | Individual Therapy | Anxiety very high lately |
| 2/27/ 19- | 932-934 | Botox injections | Intractable migraine |
| 3/1/19 | 982 - 990 | Individual Therapy | Mood stable, not as good as it has been |
| 3/8/19 | 981 | Individual Therapy. | High periods of anxiety, episode of mania since last session |
| 3/22/19 | 979 | Individual Therapy | "I'm on my manic." Having a lot of pam |
| 4/4/19 | 788-800 | Pain management | Epidural steroid injection, lumbar |
| 4/5/19 | 978 | Individual Therapy | Very depressed, "I don't feel |

| Date | Page | Type | Notes |
|---|---|---|---|
| | | | myself" |
| 4/11/19 | 977 | Individual Therapy | Cancelled - car trouble |
| 4/12/19 | 952-953 | Individual Therapy | Medication compliant and keeping mental health appointments |
| 4/15/19 | 976 | Individual Therapy | Disturbing dreams |
| 4/25/19 | 975 | Individual Therapy | "I feel guilty" |
| 4/29/19 | 966 - 974 | Individual Therapy | Thinks Lamictal was causing her to become manic |
| 5/2/19 | 965 | Individual Therapy | Father blames her for sister's death. "I ran when she died and I ran when my son died - I couldn't do anything" |
| 5/9/19 | 964 | Individual Therapy | Processed the day her younger sister hit/ dragged down the street. "I run every time... fear" |
| 5/23/19 | 963 | Individual Therapy | Went backwards emotionally. "I want to run" |
| 5/30/19 | 962 | Individual Therapy | Had depression, "I want to run." "I'm just angry" |
| 5/30/19 | 929-931 | Botox injections | Common migraine, tension headaches, Carpal tunnel syndrome |
| 6/3/19 | 961 | Individual Therapy | "I'm just angry." |
| 6/21/19 | 959 | Individual Therapy | "I've come so far" |
| 6/25/19 | 958 | Individual Therapy | Very agitated, feeling "like I want to tear somebody's face off' and "energy is very low," Spiral into depressive episode |
| 7/2/19 | 957 | Individual Therapy | Journal for moods with agitation |
| 7/12/19 | 956 | Individual Therapy | Has a lot of anger built up about dad, Misses her family |
| 7/18/19 | 955 | Individual Therapy | Cancelled - not feeling well |
| 7/23/19 | 954 | Individual Therapy | Felt ashamed over death of her little Sister |
| 8/1/19 | 951 | Individual Therapy | Sporadic moods, Hypomanic episode |
| 8/6/19 | 950 | Individual Therapy | Aid in reducing stress |
| 9/4/19 | 926 - 928 | Botox injections | Intractable migraine |
| 9/5/19 | 949 | Individual Therapy | Hypomanic episodes |
| 9/9/19 | 940-948 | Individual Therapy | More even keeled |
| 9/20/19 | 939 | Individual Therapy | Feels "spacey" |

| 10/4/19 | 938 | Individual therapy | Anger is going into anxiety |

*Plaintiff's Memorandum of Law*, ECF No. 1, pp. 24−26.

Plaintiff's arguments are well taken. As set forth above, the applicable regulations require that the ALJ determine a claimant's capacity for work on a "regular and continuing basis[,]" 20 C.F.R. §§ 404.1545(b), (c), 416.945(b)(c), which is defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. The Court of Appeals for the Third Circuit has held that, in determining a claimant's RFC, the Commissioner must consider the effect of a claimant's time off work for medical episodes. *Kangas*, 823 F.2d at 778 ("Because the decision of the ALJ and the [Commissioner] failed to evaluate the effect of [the claimant's] frequent hospitalizations on his ability to perform any work on a regular, continuing or sustained basis, a critical factor, we conclude that the [Commissioner's] finding that [the claimant] is able to engage in substantial gainful activity must be reconsidered."); *see also Rocco v. Heckler*, 826 F.2d 1348, 1350–51 (3d Cir. 1987) (remanding action where, *inter alia*, "the [Commissioner] failed to consider the inability of claimant to maintain continuous employment" resulting from frequent hospitalizations); *Snider v. Saul*, No. CV 19-1907-MN-SRF, 2021 WL 3090870, at *9 (D. Del. July 22, 2021), *report and recommendation adopted sub nom. Snider v. Kijakazi*, No. CV191907, 2021 WL 3475676 (D. Del. Aug. 6, 2021) ("However, the ALJ did not consider whether Snider's need to attend medical appointments would impact her ability to sustain work or pose a hypothetical to the VE including such a condition. . . . Therefore, the court recommends remanding this case for the ALJ to consider whether Snider's absence from work to attend medical appointments would impact her ability to perform work on a regular and continuing basis.").

In this case, Plaintiff has detailed the frequent medical appointments associated with the treatment of her physical and mental impairments. Although an ALJ must consider all relevant evidence, *see Plummer*, 186 F.3d at 429, the ALJ in this case never addressed the impact of Plaintiff's frequent need for medical and mental health treatment on her ability to work on a "regular and continuing basis." *See* R. 33–46. Furthermore, this failure cannot be viewed as harmless because the vocational expert testified that an employee who is absent from work two or more days per month cannot maintain full-time employment. R. 88; *see also Rocco*, 826 F.2d at 1350–51; *Kangas*, 823 F.2d at 778; *Tobin v. Comm'r of Soc. Sec. Admin*., No. 1:19-CV-12810, 2020 WL 4218396, at *5–6 (D.N.J. July 23, 2020) ("Based on VE's testimony, it is clear that if Plaintiff required hospitalizations and treatment at a rate resembling their frequency during certain prior time periods, he would have been unable to obtain regular, full-time time work and would appropriately be considered disabled under the SSA."); *Searles v. Comm'r of Soc. Sec*., No. 1:18-CV-15804, 2019 WL 6337890, at *6 (D.N.J. Nov. 27, 2019) ("Completely absent from the ALJ's RFC analysis is a recognition of Plaintiff's continuous treatment at Crossroads. The ALJ found that Plaintiff was capable of performing full-time work, five days a week, eight hours a day. It is irrefutable that if Plaintiff is in therapy at least three days a week for at least sixteen hours every week he would not be able to meet the requirements of full-time employment.").

The Acting Commissioner does not acknowledge *Kangas* in her brief before this Court; instead, the Acting Commissioner indirectly attacks that binding Circuit authority by citing to out-of-circuit cases that stand for different propositions. *See Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 17, pp. 38–39. Notably, the Acting Commissioner does not dispute the accuracy or the merits of Plaintiff's treatment and appointments, *see id*.; *see also id*. at 17 (noting

the improvement in Plaintiff's migraines with Botox injections), but advances only a generalized concern that other claimants could manufacture disability simply by frequently going to a doctor for any or no reason. *Id*. at 39 (citations omitted). However, this concern is not based on the actual medical record in this case, which the Commissioner has not challenged. *See also Biestek*, 139 S.Ct. at 1157 ("The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case.").

For these reasons, this Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of

the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of this issue.[4]

## V.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  February 18, 2022                                *s/Norah McCann King*
                                                        NORAH McCANN KING
                                                        UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration consider Plaintiff's frequent need for medical and mental health treatment on her ability to work on a "regular and continuing basis," the Court does not consider those claims.